IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Antwan D. Grayson, | ) | C/A No.: 1:22-cv-2029-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Mr. Hunter Peterson, Correctional Officer at BRCI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the motion for summary judgment filed by Defendant Mr. Hunter Peterson ("Peterson" or "Defendant"), a South Carolina Department of Corrections ("SCDC") employee asserting several grounds for relief. (DE 135.) Plaintiff Antwan D. Grayson ("Plaintiff" or "Grayson"), a state prisoner proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983 alleging Peterson, in his individual capacity, violated his Eighth Amendment rights.[1] Grayson alleges he was not kept safe from other inmates, leading to an assault. (DE 57.) As such, Grayson opposes the motion for summary judgment (DE 142.) Plaintiff has also filed a motion for reconsideration (DE 129), a motion for an order from the Court ordering SCDC to provide him with a tablet (DE 133), and a motion to produce (DE 140).

The parties have fully briefed the motions, and they are ripe for review and decision. After reviewing the motions and memoranda submitted, the Court grants Peterson's Motion for Summary Judgment (DE 135) and denies Plaintiff's motions (DE 129, 133, 140).

---
[1]   Plaintiff originally asserted claims against additional SCDC employees, but those claims have been dismissed. (DE 127.)

1

## BACKGROUND

Plaintiff has been incarcerated at SCDC at all relevant times and is currently housed at Lee Correctional Institution. (DE 106). In his verified complaint,[2] he alleges that following a gang riot on April 15, 2018, at Lee Correctional Institution, where he was then housed, he was transferred to Broad River Correctional Institution ("BRCI"). (DE 57, ¶¶ 9–10.) Plaintiff alleges he was released from BRCI's security detention around March 23, 2019, and assigned to the Wateree Dorm. (DE 57-1, ¶ 6.)

Plaintiff alleges that when he learned he would be moving to the Wateree Dorm, he expressed concern for his safety. (DE 57, ¶¶ 11–15.) Plaintiff further alleges:

> Peterson abandoned his training and oath to protect the safety of inmates, as he committed to running off the wing and locking the wing door behind him, preventing Plaintiff Grayson from exiting the unit . . . .
>
> Peterson was deliberately indifferen[t] to Plaintiff Grayson['s] physical safety by witnessing an assassination attempt on Mr. Grayson['s] life, failing to intervene, abandoning him and locking him on the wing with his assailants . . . .
>
> On May 14, 2019 . . . . Peterson did law library call and allowed some other inmates from the other side of the dorm come on my side of the dorm which is against policy. Moments later me and another inmate who was in F-5 with me at Lee CI when the deadly riot happen[ed] got ambushed and stabbed. Ofc. Peterson ran[] off the wing locking the wing door behind him[,] and I was stuck along with the other inmate with [me] to fight for our lives. We both had to barricade ourselves in the office on the wing . . . .
>
> When defendant Peterson [saw] Plaintiff running for his life with blood on him and left off the wing, locking the Plaintiff on the wing with his attackers was wrong and defendant admitted this on the record. (Interrogatory questions for Hunter Peterson).[3] This is not acting to protect Plaintiff or try to stop the attack with his mace (gas can) prove he did nothing to stop the attack.

---

[2] Generally, when one party moves for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c). In any event, in this Circuit, verified complaints by plaintiffs proceeding *pro se* are to be considered as affidavits when the allegations are based on personal knowledge. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

[3] The interrogatory Plaintiff references has not been submitted to the court.

(DE 57, ¶¶ 16, 23, DE 57-1, ¶ 7, DE 117, ¶ 2.) Plaintiff suffered seven stab wounds because of the encounter. (DE 57, ¶ 17.)

In support of his claims, Plaintiff has submitted an affidavit from another inmate, Ronnie M. Drake ("Drake"), attesting that a rival gang, the Bloods, maintained a hit list or kill list, that Drake had been stabbed when housed at the Wateree Dorm, and that Drake informed Plaintiff that Drake saw Plaintiff's "name on the bloods to kill hit list and its not safe for him on the yard, at least not Broad River yard" in that it is "ran by mostly blood gang members." (DE 117-1 (minor edits made).)[4]

In response, Peterson has submitted the following from his report he filed concerning the May 14, 2019, incident:

> I officer Peterson was instructed by Lt. Mingo to open 19 doors at a time for tiering. I officer Peterson then proceeded to open the first 19 doors on wateree right side (cells 117-139). I Officer Peterson were letting a few inmates out for the law library when I overheard a commotion coming from upstairs. I then proceeded to secure the wing door after letting all the inmates out for the law library. I noticed two inmates running down the steps, 1 inmates had a bloody shirt one, the other inmate had a bloody chest area. I officer Peterson got off the wing and immediately called for assistance. Both inmates secured themselves in the office on the wing. I officer Peterson continued observing the inmates in the office, when inmate ▮▮▮▮▮▮▮▮▮▮▮▮ proceeded to punch the office window shattering it trying to get to the other inmates. At which time another inmate ▮▮▮▮▮▮▮▮▮▮▮▮ came to the wing door with a bloody shirt wrapped around his right arm area. Ofc. Martin, AW Peeples, Lt. Mingo, Ofc. Ramp, Ofc. Sease, Ofc. Freeman and Sgt. Brown entered the unit to assist with escorting the inmates out to medical, and began locking down the dorm. At approx 12:20pm all inmates were secured behind there cell doors. I officer Peterson identified both inmates secured in the office as Inmate ▮▮▮▮▮▮▮▮▮▮▮▮ and Inmate Grayson, Antwan SCDC#329430. END OF REPORT

---

[4] Plaintiff states he is a validated member of the Crip Nation and that he was informed that "the Blood Nation had a hit list and [he] was mentioned on it." (DE 57-1, ¶ 3.)

3

(DE 135-5.)

> Peterson also has submitted the relevant investigation report that provides in part:
>
> On May 14, 2019, Agents Lewis and Garris interviewed CO Peterson at BRCI and obtained a voluntary written statement . . . . CO Peterson provided the following information: He was working on the right side of the Wateree dorm. While he was letting inmates out for law library, he heard a disturbance coming from upstairs. He looked back inside the dorm and observed two inmates running down the stairs bleeding. He exited the wing and locked the door behind him. He observed two more inmates running down the stairs carrying weapons. He identified one of the inmates carrying a weapon as inmate XXXXX. The two inmates who were bleeding locked themselves inside the office. He activated the A-team over the radio. Inmate Stalk ran to the office door and punched the window. Inmate XXXXX ran around the dorm out of sight. Once the A-team arrived, they entered the dorm and removed three injured inmates. The dorm was placed on lockdown. There was no trouble from the inmates while they were locking down. They proceeded to conduct a roll call count where they observed inmate Stalk in someone else's room. They removed inmate XXXXX from the room and escorted him out of the dorm . . . .
>
> On May 14, 2019, Agents Lewis and Garris attempted to interview inmates XXXXX and Grayson. Both inmates refused to cooperate and would not speak to Police Service Agents.

(DE 135-6.)

Finally, Peterson has submitted two affidavits in support. First, Henry Upshot ("Upshot"), Major over SCDC Training and Staff Development, has submitted an affidavit stating he has reviewed the investigation reports of the incident and "[a]fter reviewing the reports and communicating with SCDC employees and staff, I find that Hunter Peterson properly followed SCDC Policies and Procedures for attacks with a deadly weapon" and acted in accordance with relevant policy. (DE 135-4, ¶ 5.)

Second, Randy Ward, SCDC Lieutenant over the Intelligence Unit and Contraband, has submitted an affidavit stating the investigation into the incident revealed Plaintiff "was never a target for the attack alleged in his complaint," instead the attack was directed at his roommate,

and that Plaintiff "decided on his own volition to involve himself in this attack." (DE 135-3, ¶ 9.)[5]

Peterson moves for summary judgment on Grayson's claims raising several grounds for relief. (DE 135-1.) Peterson argues 1) Grayson has not shown Peterson's personal involvement for § 1983 liability (*id.* p. 4), 2) he did not know of or disregard an excessive risk to inmate health or safety (*id.* p. 7), 3) to the extent he is being sued in his official capacity, he is entitled to Eleventh Amendment Immunity (*id.* p. 11), 4) he is entitled to qualified immunity (*id.* p. 12) because the South Carolina Tort Claims Act bars Grayson's claims against him (*id.* p. 14), and 5) Grayson is not entitled to punitive damages (*id.* p. 16).[6]

## **LEGAL STANDARD**

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[5] In response, Plaintiff has submitted an affidavit from another inmate, Larry White ("White"). (DE 142-1.) White states that "I was informed by SCDC's Staff that my name and several others including Grayson were listed on a kill list by Blood members" and that White "later found out after Antwan Grayson and Javeas Cohn were assaulted that it was because of [the gang hit] list." (DE 142-1.)

[6] The Court need not address Peterson's grounds for summary judgment on Eleventh Amendment immunity as to claims Plaintiff brings against him in his official capacity, nor the inapplicability of punitive damages sought against persons acting in their official capacity where, as here, Plaintiff is only asserting claims against Peterson in his individual capacity. Likewise, the Court need not address Peterson's arguments concerning state-law claims where, as here, Plaintiff brings none. (*See* DE 57, at 1, 3 ("Each Defendant is sued in their individual capacities"), 6, 7 ("Defendant Peterson was deliberately indifferen[t] to Plaintiff Grayson physical safety by witnessing an assassination attempt on Mr. Grayson[']s life, failing to intervene, abandoning him and locking him on the wing with his assailants . . . . violat[ing] Plaintiff Grayson[']s right[s] under the Eighth Amendment . . . ."), 8.)

5

entitled to a judgment as a matter of law.'" *Id*. at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of proof at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp*., 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied . . . ." *Id*. at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp*., 477 U.S. at 324 (citation omitted). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2728 (3d ed. 1998)). "The court may grant summary judgment only if it concludes

6

that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 659-60.

## DISCUSSION

### A. § 1983 Claims

Peterson argues summary judgment is appropriate because Grayson has not shown Peterson's personal involvement for § 1983 liability, and that he did not know of or disregard an excessive risk to inmate health or safety. (DE 135-1, pp. 4, 7.) This Court disagrees because there are facts in dispute on these grounds. "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting 'under color of' state law. To establish personal liability under § 1983, however, the plaintiff must 'affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights.' That is, the official's 'own individual actions' must have 'violated the Constitution.' Importantly, mere knowledge of such a deprivation does not suffice.'" *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (internal citations omitted).

Moreover, the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). "Gratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective, any more than it squares with

7

evolving standards of decency." *Odom v. South Carolina Dept. of Corr.*, 349 F.3d 765, 770 (2003) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To establish a claim under the Eighth Amendment, a prisoner must satisfy two elements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, a prisoner must present evidence that the prison officials had a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 297). That is, that Defendant acted with deliberate indifference. *See id*.

To be deliberately indifferent, a prison official must "know of and disregard an objectively serious . . . risk of harm." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A showing of mere negligence does not qualify as deliberate indifference. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

To begin with, Grayson's verified complaint and White's affidavit raise an inference that Peterson was involved in Grayson's custody and protection on the day of the assault. Equally, White states that "I was informed by SCDC's Staff that my name and several others including Grayson were listed on a kill list by Blood members" and that White "later found out after Antwan Grayson and Javeas Cohn were assaulted that it was because of [the gang hit] list." (DE 142-1.) Accordingly, summary judgment is not appropriate on these grounds. But this ruling is not dispositive of Peterson's qualified immunity defense as noted below.

    **B. Qualified Immunity**

Turning next to Peterson's qualified immunity defense, Peterson contends Plaintiff has

8

failed to show that he ignored any obvious risk to Grayson. Peterson also contends that he has shown that he responded reasonably in good-faith to a substantial risk, and so, he is entitled to qualified immunity. (DE 135-1, p. 14.) This Court agrees. Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *See Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to Plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.* at 236. Here, the parties agree that an attack occurred in May 2019 and that Plaintiff suffered physical harm.[7] Additionally, based on the evidence before the Court, Plaintiff has established that Peterson had actual knowledge of a substantial risk to Plaintiff's health and safety.

---

[7] Plaintiff previously filed a supplement to his original complaint, including his medical records for May 14, 2019, indicating that he was stabbed multiple times that day. (*See* DE 11.) Defendant has not challenged the authenticity of any documents Plaintiff has submitted, including his medical records.

However, actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure-to-protect cases, 'prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.'" *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (citing *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)). But where prison officials take no action, liability may occur:

> But "completely failing to take *any* action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield* [*v. Bass*], 106 F.3d [525, 532 (4th Cir. 1997)]; *see also*, e.g., *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir.2003) ("[A] correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate."); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir.1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *cf. Prosser* [*v. Ross*], 70 F.3d [1005, 1008–09 (8th Cir. 1995)] (finding no deliberate indifference where prison guard ran to get help immediately after inmate threw first punch at plaintiff). Thus, courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir.2002).

*Id.* (emphasis in original).

This case, however, stands in contrast to the facts in *Raynor*. *See id.* at 129–30 & n.5 (finding a genuine dispute of material fact and indicating qualified immunity did not apply where the plaintiff alleged "Pugh had actual knowledge of the attack as it was happening because Pugh watched the entire incident. Because he did so without radioing for assistance or taking any other action, in Raynor's view Pugh did not respond reasonably to the substantial risk to Raynor's safety."). Plaintiff has not provided any evidence, and the Court cannot discern any, that Peterson had a reasonable opportunity to act and simply refused to do so. Instead, as evident in the relevant incident report, Peterson "got off the wing," "immediately called for assistance,"

10

and "continued to observ[e] the inmates in the office," even as other inmates either attempted to or succeeded in shattering the office door window. (DE 135-5.) Peterson has also submitted the relevant investigation report indicating that upon discovering wounded inmates and inmates carrying weapons, he exited the wing, locked the door, and activated the response team over the radio. (DE 135-6.) The court cannot discern a constitutional violation, so Peterson is entitled to qualified immunity. And so, Peterson's motion for summary judgment is granted.

### C. Grayson's Other Motions

Plaintiff has additionally filed three motions that are pending before the Court: a motion for reconsideration (DE 129), a motion for order from the court ordering SCDC to provide him with a tablet (DE 133), and a motion to produce discovery (DE 140).

As to the first motion, Grayson objects to the Court allowing Peterson 15 extra days to re-file his motion for summary judgment. (DE 129.) Grayson moves under Rule 59(e) Fed. R. Civ. P.; however, this rule provides when a party may file a "motion to alter or amend a judgment," and Plaintiff is not challenging a judgment. Rather, Grayson challenges this Court's decision to allow Peterson 15 days to refile his motion for summary judgment. Even if Rule 59(e), Fed. R. Civ. P., were the proper rule to make this challenge, the Court otherwise denies Grayson's motion challenging this Court's discretion to grant an extension to refile the motion.

Second, Plaintiff seeks a court order providing him a tablet, arguing he cannot do legal research. (DE 133.) However, based on ongoing briefing (DE 138, DE 139, DE 143), it appears that Plaintiff has had access to a tablet provided by SCDC since January 16, 2024. Therefore, Plaintiff's motion is denied as moot.

Third, Plaintiff seeks an order compelling Peterson to produce certain documents about if he was the target of the attack on May 14, 2019. (DE 140.) Peterson argues, and Plaintiff does not dispute, that the motion was filed out of time. (DE 141.) Nevertheless, Peterson contends he

11

has responded to Grayson's discovery. (*Id.*) Based on Peterson's undisputed representations, the Court denies Plaintiff's motion as moot.

**CONCLUSION**

For these reasons, Peterson's Motion for Summary Judgment (DE 135) is granted. Plaintiff's motion to alter or amend the judgment is denied, and Plaintiff's remaining motions are denied as moot (DE 129, 133, 140).

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 26, 2024

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, under Rules 3 and 4 of the Federal Rules of Appellate Procedure.

13